## UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

| | |
|---|---|
| Danny Gene Mitchell Jr., individually and on behalf of all others similarly situated, | 1:21-cv-01949 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Ricoh Imaging Americas Corporation, | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1. Ricoh Imaging Americas Corporation ("defendant") manufactures, markets, labels and sells cameras under the K-70 model under the Pentax brand ("Product").



2. Light enters a camera through an opening in a lens, called an aperture.

3. The shrinking or enlarging of camera's aperture allows more or less light to reach the sensor, which affects an image's brightness (exposure).

4. A wider aperture results in a brighter photo, and a smaller one makes a picture darker.

5. Failure of certain parts inside a camera that control the aperture results in dark – almost black – images.

6. The aperture in the K-70 is controlled by a solenoid, located within the Diaphragm Control Block ("DBC").



7. The solenoid contains a coil of wire, through which current flows, creating a magnetic flux to push or pull the horseshoe-shaped part called an armature, or plunger.

<u>Armature</u>          <u>Solenoid</u>

8. The cause of the exposure issues is due to the armature's failure.

9. The coil assembly contains a fixed magnet to keeps the armature engaged.

10. This energizes the coil and creates an opposing magnetic force, which allows the armature to be withdrawn.



11. However, the plunger (armature) retains residual magnetism.

12. Eventually, the magnetic field produced by the coil is not strong enough to overcome the combined force of the fixed magnet and the magnetized plunger, to cause release of the plunger.

13. Reasons for this include the relatively higher coercivity of the armature material than used in older models of different Pentax cameras, which retained their magnetism after the field strength was removed.

14. Had the Product used low coercivity material such as soft iron (low carbon) for the plunger, this issue could have been averted.

15. Users of the Product have devised clever ways to quickly "fix" the exposure issues caused by these parts.

16. These methods involve activating the coil to produce a reverse magnetic field, canceling the fixed field, and demagnetizing the armature.

17. One option is taking multiple, rapid pictures, to demagnetize the armature.

18. Another is filing the armature to reduce the coupling to the fixed magnet and slow the buildup of residual magnetism.

19. However, the magnetic structure of the coil assembly is unchanged, and the armature

will gradually become re-magnetized, presenting the same issues.

20. Numerous users report success by replacing the Product's solenoid with a prior version of this part, from a different manufacturer.

21. These last two methods require detailed knowledge, specialized tools, hard-to-find parts from used cameras, and the ability to disassemble and reassemble the Product, which the average user is unequipped for.

22. The way in which this problem manifests makes this more likely to occur when the Product is not regularly used.

23. In some instances, it could take several years for the buildup of magnetism to cause aperture block failure.

24. This explains why this phenomenon occurs in the presence of low shutter count and "older," but unused cameras.

25. The extent of this issue goes beyond a few isolated instances, as more and more affected users of the Product are calling attention to it through the internet.

26. In fact, several authorized repair centers ("ARCs") who serviced K-70 units under warranty informed consumers that no evidence of failure was required to be presented.

27. This is because the ARCs have been informed, upon information and belief, by Defendant, that this is a known issue.

28. In an "Explanation of Repairs" returned with a K-70 sent in for exposure problems, the work performed was described as "Aperture Replaced."

29. In the "Description of Parts Used," the ARC stated, "Aperture control Assy., resistor chip," which corresponds to the issue identified by Plaintiff.

30. However, customers not within the warranty period are left to pay hundreds of dollars

on repair and shipping costs or be left with a camera that is non-functional.

31. These issues are prevalent enough to have spawned a cottage industry dedicated solely to the repair of faulty aperture control systems on the Pentax K-series, including the K-70.[1]

32. Reasonable consumers must and do rely on a company to honestly identify and describe the components, reliability and features of the Product.

33. The value of the Product that plaintiff purchased was materially less than its value as represented by defendant.

34. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

35. Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

36. The Product is sold for a price premium compared to other similar products, from $750 to $1200 purchased new and between $540 to $650 when purchased used, a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

Jurisdiction and Venue

37. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

38. Upon information and belief, the aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

39. Plaintiff Danny Gene Mitchell Jr. is a citizen of Colorado.

40. Defendant Ricoh Imaging Americas Corporation is a Delaware corporation with a principal place of business in Parsippany, Morris County, New Jersey.

---

[1] Pentaxcamerarepair.com.

41. The parties are citizens of different states.

42. Venue is proper because plaintiff resides in this district and a substantial portion of the events giving rise to the claims occurred in this district.

## Parties

43. Plaintiff Danny Gene Mitchell Jr. is a citizen of Grand Junction, Mesa County, Colorado.

44. Defendant Ricoh Imaging Americas Corporation, is a Delaware corporation with a principal place of business in Parsippany, New Jersey, Morris County.

45. Defendant's cameras are sold at retail stores throughout Colorado and via the internet from third-party sellers.

46. Plaintiff bought the Product in 2018, from the website of B & H Photo, a New York-based company known for its wide selection of cameras and knowledgeable personnel.

47. Plaintiff bought the Product at or exceeding the above-referenced price.

48. Plaintiff's claims accrued when his K-70 suffered from the exposure issues caused by the defective aperture.

49. Plaintiff's claims did not accrue at the time of his purchase because the faulty aperture was not latently defective but functioned properly.

50. Plaintiff's claims are subject to equitable tolling and equitable estoppel.

51. Plaintiff was delayed in filing this action due to Defendant's wrongful conduct.

52. Plaintiff did not have enough information to commence the action sooner because Defendant failed to disclose, and concealed, that the cause of the issue was due to the lower quality materials used in the aperture.

53. Plaintiff contacted Defendant and/or attempted to contact Defendant to remedy these

issues but was not successful in achieving a resolution.

54. Defendant's post-sale handling of Plaintiff's warranty claim and inquiry was deceptive and misleading because he was told by Defendant or its authorized representatives, that the issue could be fixed by resetting his camera, and/or that what he experienced was an isolated incident.

55. Plaintiff was induced by fraud, misrepresentations, omissions and/or deception to refrain from filing this action sooner.

56. Plaintiff was diligent in commencing this action within a reasonable time after the facts giving rise to the estoppel ceased.

57. Plaintiff was not aware of the exposure issue within the time permitted by any applicable warranty, because the aperture did not fail during the warranty's duration.

58. Defendant knew the lower-quality materials used in the aperture control block would suffer issues of magnetism, causing the issue to occur at unpredictable intervals.

59. Defendant knew that the failure of Plaintiff's K-70 was not due to his failure, but through its own actions in selling the Product with lower quality materials that would experience high failure rates, at uncertain periods of time, not even based on how long a user owned the camera.

60. Defendant knew or should have known of the issue through complaints they received directly or were informed of.

61. Defendant failed to notify merchants and distributors of the Product's issue described here and no notice was provided to Plaintiff prior to or after his purchase.

62. Defendant has not remedied the issue and continues to sell the Product.

63. Defendant's post-sale conduct, including failure to cover the repair or replacement

of the aperture assembly, was deceptive, since Defendant knew the issue affected a fixed percentage of all K-70s, and that many users would have this occur after the warranty expired.

64. Defendant's fraudulent concealment caused Plaintiff to lack knowledge of his causes of action.

65. Defendant is estopped from asserting a statute of limitations defense.

66. Defendant refused to repair or replace Plaintiff's Product.

67. Plaintiff would not have purchased the Product if he knew the representations and expectations of its reliability and stable functioning were false and misleading.

68. Plaintiff chose between the Product and other similar products which did not misrepresent their attributes and/or lower-priced products.

69. The Product was worth less than what Plaintiff paid and he would not have paid as much absent Defendant's false and misleading statements and omissions.

70. Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance that Product's representations are consistent with its abilities.

<u>Class Allegations</u>

71. The class will consist of all Colorado residents who purchased the Product during the statutes of limitations for each cause of action alleged.

72. Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

73. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

74. Plaintiff is an adequate representative because his interests do not conflict with other members.

75. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

76. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

77. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

78. Plaintiff seeks class-wide injunctive relief because the practices continue.

Colorado Consumer Protection Act ("CCPA"), Colo. Rev. Stat.
§ 6-1-101 et seq.

(Consumer Protection Statute)

79. Plaintiff incorporates by reference all preceding paragraphs.

80. Plaintiff and class members desired to purchase a camera that functioned reliably and consistently, and did not experience exposure, or black picture problems.

81. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

82. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

83. Plaintiff relied on the representations.

84. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Breaches of Express Warranty,
Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

85. The Product was manufactured, labeled and sold by defendant and expressly and impliedly warranted to plaintiff and class members that functioned reliably and consistently, and

did not experience exposure, or black picture problems.

86. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

87. This duty is based on Defendant's outsized role in the market for this type of Product.

88. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

89. Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices.

90. The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because they were not fit to pass in the trade as advertised.

91. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Negligent Misrepresentation

92. Defendant had a duty to truthfully represent the Product, which it breached.

93. This duty is based on defendant's position, holding itself out as having special knowledge and experience this area.

94. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant.

95. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

96. Plaintiff and class members would not have purchased the Product or paid as much

if the true facts had been known, suffering damages.

### Fraud

97. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that they functioned reliably and consistently, and did not experience exposure, or black picture problems

98. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

### Unjust Enrichment

99. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

### Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;
2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;
3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;
4. Awarding monetary damages, statutory damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;
5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and

experts; and

6. Other and further relief as the Court deems just and proper.

Dated: July 17, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800
spencer@spencersheehan.com