UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

Danny Gene Mitchell Jr., individually
and on behalf of all others similarly
situated,

        Plaintiff,

- against -

Ricoh Imaging Americas Corporation,

        Defendant

1:21-cv-01949

**PLAINTIFF'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE**

In response to this Court's Order that Plaintiff show cause why this action should not be dismissed based on the absence of subject-matter jurisdiction, Plaintiff, through counsel, submits the following:

**I.  INTRODUCTION**

On July 20, 2021, this Court ordered Plaintiff to show cause why the complaint should not be dismissed due to the lack of subject-matter jurisdiction. ECF No. 4. This Court correctly notes that "A federal court must satisfy itself as to its own jurisdiction, and may take sua sponte action to do so." ECF No. 4 citing *Citizens Concerned for Separation of Church & State v. City & Cty. of Denver*, 628 F.2d 1289, 1297 (10th Cir. 1980).

The responsibility for establishing subject-matter jurisdiction is the "party invoking federal jurisdiction." ECF No. 4 citing *Radil v. Sanborn W. Camps, Inc.*, 384 F.3d 1220, 1224 (10th Cir. 2004).

Courts "should not proceed having not first assured itself that jurisdiction exists." ECF No. 4 citing *Cunningham v. BHP Petroleum Great Britain PLC*, 427 F.3d 1238, 1245 (10th Cir. 2005).

1

## II.  PLAINTIFF ALLEGES SUBJECT-MATTER JURISDICTION PURSUANT TO 28 U.S.C. § 1332(D)(2)

The Complaint alleged subject-matter jurisdiction based on the Class Action Fairness Act ("CAFA"). 28 U.S.C. § 1332(d)(2). This statute vests a district court with "original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different than any defendant." 28 U.S.C. § 1332(d)(2)(A); ECF No. 4 citing *Dutcher v. Matheson*, 840 .3d 1183, 1190 (10th Cir. 2016) (under CAFA, subject-matter jurisdiction in class actions require " [1] at least 100 members and [2] over $5 million in controversy when [3] minimal diversity is met").

Plaintiff acknowledges the factual allegations of the Complaint were not presented with the same specificity as provided in this response. Should this Court require it, Plaintiff will file an amended complaint which includes the allegations presented here.

### A.  The Class of Purchasers Exceeds 100 Members

Plaintiff alleged that the class he seeks to represent "will consist of all Colorado residents who purchased the Product during the statutes of limitations for each cause of action alleged." Compl. ¶ 71. However, the Court correctly notes that plaintiff did not allege whether the CAFA requirement of 100 or more members is satisfied. Even if plaintiff pointed to the size of defendant – a multinational corporation – and its experience in the camera market, the Court would still be correct to inquire further.

The Camera and Imaging Products Association ("CIPA"), the Japanese trade group representing major manufacturers of cameras, releases shipment numbers of all cameras. For 2020, they reported over 7.5 million digital cameras shipped outside of Japan. Roughly half, or 3.75 million, are directed to the United States.

Based on data obtained from Japanese regulatory filings and reports from BCN, a Japanese aggregator of sales data, the market share of Pentax cameras in the United States is approximately five percent.

Five percent of 3.75 million is 187,500. According to the 2015 American Community Survey, Colorado's population is 1.71% of the total United States population. These figures correspond to 3,188 Pentax cameras sold in Colorado in 2020, and over 9,500 Pentax cameras during the three-year statute of limitations under the Colorado Consumer Protection Act and for common law fraud.

While Pentax sells multiple camera models, the K-70 is considered its best-selling. Assuming 50% of all sales in Colorado were of the K-70, this corresponds to 4,781 cameras sold during the relevant period.

Based on analysis of consumer camera purchases, these are mostly unique purchasers. Even accounting for a small (c. 10%) number of consumers who purchase more than one K-70, the number of unique purchasers, or class members, will be 4,303. This figure exceeds the 100-member threshold required by 28 U.S.C. § 1332(d)(5)(B).

Moreover, this figure is adequate because plaintiff's allegations are based on the Product being "worth less than what Plaintiff paid." Compl. ¶ 69. This theory of loss applies across all purchasers of the K-70 cameras, regardless of if they experienced the black picture issue described in the Complaint or not, because defendant sold the Product "at higher prices than it would have in the absence of this misconduct." Compl. ¶ 34.

B.     The Amount-in-Controversy Exceeds the Jurisdictional Threshold

The Complaint alleged the K-70 costs between "$750 to $1200 purchased new." Compl. ¶ 36. The Complaint regrettably failed to allege that a significant percentage of K-70 owners spend several hundred dollars purchasing accessories for their cameras, such as lenses, cases, and

3

mounts. When the estimated number of purchasers are multiplied by $1,200 per unit, the total is $5,163,750.00.

Under Colorado law, a plaintiff may seek treble damages if it is established by clear and convincing evidence that a defendant acted in bad faith. C.R.S. § 6-1-113(2); *Vista Resorts, Inc. v. Goodyear Tire & Rubber Co.*, 117 P.3d 60 (Colo. App. 2004).

The Complaint's allegations that defendant's conduct was fraudulent, willful, knowing, and intentional, are – and will be – sufficient for plaintiff to obtain treble damages.

Lastly, plaintiff seeks attorney fees under the CCPA. Compl., Prayer for Relief, at 5; C.R.S. § 6-1-113(2)(b); *see Martinez v. Lewis*, 969 P.2d 213, 222 (Colo. 1998) (providing for recovery of attorney fees where litigation has a "significant impact to the public" based on factors including (1) the "number of consumers directly affected by the challenged practice;" (2) "the relative sophistication and bargaining power of the consumers affected by the challenged practice;" and (3) the "evidence that the challenged practice previously has impacted other consumers or has significant potential to do so in the future.").

### III.   CONCLUSION

For the foregoing reasons, Plaintiff requests that this Court find he has shown good cause for invoking this Court's subject-matter jurisdiction, and not dismiss this action.

Dated:   August 4, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800
spencer@spencersheehan.com

4